UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS

DAVID A. STEBBINS                                                      PLAINTIFF

VS.                                    CASE NO. 17-CV71__JM

KENNETH HIXSON, DAVID GLOVER,                                        DEFENDANTS
PHILLIP WHITEAKER, AND THE STATE OF ARKANSAS

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 31 2017

JAMES W. McCORMACK, CLERK
By:_____ DEP CLERK

## **COMPLAINT AND JURY DEMAND**

Comes now, *pro se* Plaintiff David A. Stebbins, who hereby submits the following

complaint against Defendants Kenneth Hixson, David Glover, and Philip Whiteaker in their

enforcement (not judicial) capacities for a violation of 42 USC § 1983, and also for a claim of

First Amendment Retaliation. I also sue the State of Arkansas for a count of ADA retaliation

under 42 USC § 12203.

This case assigned to District Judge _Moody_
and to Magistrate Judge _Kearney_

## **SECTION I: DEFENDANTS' LOCATIONS**

1.      The three individual defendants – Kenneth Hixson, David Glover, and Phillip Whiteaker,

are all justices of the Arkansas Court of Appeals. They can be served with process at the

following address:

> Arkansas Justice Building
> 625 Marshall Street,
> Little Rock, AR 72201

2.      The State of Arkansas can be served through the office of the Arkansas Attorney General,

at the following name and address:

> Leslie Rutledge
> 323 Center Street, Suite 200
> Little Rock, Arkansas 72201

## **SECTION II: PRELIMINARY MATTERS**

3.      Before we continue with the complaint proper, we should address these issues first, since

they are likely to come up if I do not nip this in the bud right off the bat.

### Sub-Section 1: Venue and Jurisdiction

4.      The three individual defendants all live and work in Little Rock. It is from that place of business that they engaged in the conduct complained about in this Complaint. Therefore, venue is proper in this court both under 28 USC § 1391(b)(1) and § 1391(b)(2).

5.      This Court has federal question jurisdiction.

6.      Venue is proper in this Court as well. In fact, it would not be proper in any other court. The current lawsuit is for actions committed by appellate court justices committed in their enforcement (not judicial) capacity. While the actions of an agent of Boone County may be relevant to determining whether the Defendants' actions were unconstitutional, that alone does not mean the unconstitutional actions occurred in Boone County. I might as well be from a completely different state while dealing with the AR Court of Appeals.

### Sub-Section 2: Immunity

7.      The three individual defendants are not entitled to judicial immunity in this case because the actions they are being sued for were taken in their enforcement capacity. See Supreme Court of Virginia v. Consumers Union of United States, Inc., 446 U.S. 719, 736 -737 (1980) (judge not entitled to judicial immunity when acting in enforcement capacity).

8.      The State of Arkansas does not have Eleventh Amendment immunity in this case. See 42 USC § 12202. This is a valid abrogation of the states' eleventh amendment immunity. See Tennessee v. Lane, 541 US 509 (2004).

9.      See also United States v. Georgia, 546 US 151 (2006), holding that 42 USC § 12202 is a valid abrogation of a state's 11th Amendment immunity if the complaint is equally cognizable under the 14th Amendment (and, by proxy, the first 10 Amendments of the Bill of Rights, under

the incorporation doctrine). Any of ADA retaliation under 42 USC § 12203 would be equally

cognizable as an act of First Amendment retaliation, since any statutorily protected activities

protected by the Americans with Disabilities Act would necessarily also be protected by either

the First Amendment's right to free speech, its right to freedom of the press, and/or its right of

access to the courts[1]. Therefore, under the doctrine of incorporation, it would also be a violation

of the 14th Amendment.

10.     Therefore, immunity is no bar to this case.

### SECTION III: FACTS OF THE CASE

11.     The following facts are relevant to this case.

### Sub-Section 1: Plaintiff's Litigation History

12.     Plaintiff – a resident oft he city of Harrison, Arkansas and of Boone County, Arkansas –

has Asperger Syndrome, a disability which severely hinders his ability to socialize with others,

make friends, get jobs, get a girlfriend, etc.

13.     Because this disability is not obvious (like blindness or paraplegia), many persons do not

realize that it even IS a disability, and thus, they believe that they have no obligation under the

Americans with Disabilities Act to provide reasonable accommodations for it. This leads to many

times when Plaintiff does not get the reasonable accommodations he is supposed to be legally

entitled to. Thus, Plaintiff was faced, many many times, with two options: Either suck it up and

let people do whatever they want to him and walk all over him, or file suit in federal court.

Plaintiff quickly decided that the former was 100% out ofthe question.

14.     Plaintiff could not afford to hire an attorney on an hourly basis, and because

discrimination is an extremely complication area oflaw (indeed, the Defendant's mindset is an

---

1   See California Motor Transport Co. v. Trucking Unlimited, 404 US 508 (1972) ("The right of access to the courts
    is indeed but one aspect of the right to petition").

essential element), it is extremely rare for an attorney to take a case on contingency, especially

when the Defendants in those cases honestly believe that they were doing nothing wrong.

15.     Thus, Plaintiff had no choice but to represent himself pro se in these matters.

16.     A non-exclusive list of the ADA cases where Plaintiff represented himself are ...
    (a)     Case No. 10-3305 in the U.S. District Court for the Western District of Missouri;
    (b)     Case No. 10-3041 in the U.S. District Court for the Western District of Arkansas;
    (c)     Case No. 10-5025 in the U.S. District Court for the Western District of Arkansas;
    (d)     Case No. 10-3086 in the U.S. District Court for the Western District of Arkansas;
    (e)     Case No. 10-3072 in the U.S. District Court for the Western District of Arkansas;
    (f)     Case No. 11-3078 in the U.S. District Court for the Western District of Arkansas;
    (g)     Case No. 11-3057 in the U.S. District Court for the Western District of Arkansas;
    (h)     Case No. 15-0036 in the U.S. District Court for the Eastern District of Arkansas;
    (i)     Case No. 16-0545 in the U.S. District Court for the Eastern District of Arkansas.
    (j)     Case No. 16-545 in the U.S. District Court for the Eastern District of Arkansas.

### Sub-Section 2: Defendant's Longstanding Vendetta Against Me

17.     The State of Arkansas, and all of her employees, have made absolutely no attempt to hide

their disdain for me because of the aforementioned litigation history. At nearly every opportunity,

the State of Arkansas has harassed, badgered, bullied, and persecuted me using their powers as

sovereign, to try and get me to stop standing up for myself in court.

18.     Here are just a few examples of when this hatred of me manifested as government

actions:

    (a)     In the late summer/early fall of 2011, I was sent a letter from a person named David

D. Stebbins, stating that, if I did not stop filing lawsuits that he disagreed with. This was a

*written* threat. I will be able to produce a copy of it if need be. Then, in November of that

same year, I was arrested with that man as the alleged victim. He cut himself with a knife and

then accused me of attacking him with the knife. Well, the prosecutor used that as an

opportunity to take away my right of access to the courts – ***just as the alleged victim of the***

***crime had previously threatened in writing to do*** – when he issued a plea bargain offer that

included a demand that I not file any pro se lawsuits while on probation.

    i.    I wish to emphasize: This is not merely a case of a government agency attempting to use its power as a sovereign to censor my right of access to the courts. This is a case of somebody threatening, in writing, to conspire with government to deprive me of my rights, and then actions were performed that were consistent with those written threats. This increases the likelihood exponentially that the arrest was in fact planned months in advance.

    (b)    In Case No. 2012-85-4 in the Boone County Circuit Court, after a jury issued its verdict, I moved for Judgment NOV. The motion was denied in part because "Mr. Stebbins uses his medical condition … as a waepon" and "I have never seen anyone abuse the right of access to the courts like he has." In short, he was denying me justice in the civil courts *specifically because* of my litigation history.

    (c)    In Case No. 2012-85-4 in the Boone County Circuit Court, it was revealed, after the jury verdict was entered, that the Defense Attorney used ex parte communications to rig the case in his favor. Despite this, the special judge refused to punish the Defense Attorney for this crime, in part because "Mr. Stebbins is suffering from a condition … more serious than Aspergers alone."

19.    There are plenty of other examples besides these three. But for the time being, this should be good enough to show you that the State of Arkansas clearly has a vendetta against me.

### Sub-Section 3: State Court Proceedings

20.    When I was arrested pursuant to the planned-months-in-advance arrest (as explained in Paragraph 18(a) and 18(a)(i)), I sued the alleged victim for $11,000,000 for, among other things, malicious prosecution and abuse of process. That case was given Case No. 2012-85-4 in the

Boone County Circuit Court.

21.     Special Judge Russel Rogers was appointed to hear and decide that case. On January 23, 2015, I received an email from his secretary, containing an order stating, in pertinent part, that he was sua sponte dismissing all but two claims in the case. I will refer to this order as the "January 23, 2015 order," since it does not have a better name. Included among the sua sponte dismissals were the aforementioned abuse of process and malicious prosecution torts.

22.     The two remaining claims went to jury trial. The jury issued a verdict in the Defendants' favor on the two remaining claims, mostly because the judge would not let me tell my side of the story and allowed the defense attorney to repeatedly introduce prejudicial, hearsay evidence.

23.     I filed an appeal. That appeal was given Case No. CV-16-16. However, as it turns out, the January 23, 2015 order was not actually in the record. Therefore, on October 7, 2016, the Court of Appeals remanded the case back to the circuit court to correct this deficiency.

24.     The Clerk took 6½ months to finally comply with this mandate, despite originally being given 30 days by the Court to comply with the order. Remember that, as it will be important in a minute.

25.     Anyway, when she finally did comply, she said that she had already provided everything, claiming that there was no order dated January 23, 2015 for her to include.

26.     In light of this, on September 6, 2017, the Court of Appeals held that the appeal was technically an interlocutory one, and that the case still had eight (8) claims remaining. The appeal was therefore dismissed for lack of jurisdiction, and the case sent back to the Circuit Court to adjudicate the remaining claims.

27.     Because the Circuit Clerk had a history of ignoring the Court of Appeals' mandate (as I said, she took 6½ months to comply with the previous mandate to correct the record, when she

was initially given 30 days), I called her twice and asked her if she would comply with that mandate and accept my motions for filing. Indeed, my fears ended up being corroborated, as she stated that she felt the case was "done" (in other words, there was nothing left to file). I also called her a third time, but she never picked up the phone.

28.     So I filed a motion in the Court of Appeals, asking them to act in their enforcement capacities and enforce the mandate. It arrived at the AR Court of Appeals and was uploaded to their version of PACER (known as AOC Court Connect) on September 27, 2017. On October 25, 2017, the Court of Appeals issued a one-sentence order denying the motion with no explanation.

29.     This has caused me the injury of deprivation of court access. My deprivation of court access was not inflicted as a punishment; rather, it was because the Clerk refused to obey the Court of Appeals' mandate that the case was not complete, and the Court of Appeals refused to enforce their mandate. Not only am I unable to litigate the eight (8) claims that remain in the Circuit Court case, but I also am forever barred from obtaining an appeal on the merits of the two claims that were adjudicated.

30.     In addition to costing me $11,000,000 in damages in the circuit court case, I have also been deprived of post-judgment interest in the amount of 10% of the judgment amount. At $11,000,000, that means the post-judgment interest would have come out to $1,100,000 per year, or $3,013.70 per day.

## SECTION IV: LAW AND DISCUSSION

31.     The following law is necessary to understand this case. Please remember that *neither the State of Arkansas nor the judges are immune*, because the ADA abrogates 11th Amendment immunity and judges never had immunity to begin with for actions taken in their enforcement capacities.

## Sub-Section 1: § 1983 claims

32.     To prevail on a claim under 42 USC § 1983, I must prove two essential elements: (1) that the underlying conduct was committed by a person acting under color of state law, and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.See Parratt v. Taylor, 451 US 527, 535 (1981).

33.     The individual defendants in this case are unquestionably acting under color of state law. So that essential element is beyond dispute.

34.     Their refusal to enforce the mandate has caused me the injury of deprivation of court access. As stated previously, because they will not force the Circuit Clerk to do her job, I am forever barred from litigating the eight remaining torts in that case, and I am also forever barred from obtaining an appeal on the merits of the two torts that were litigated. See the persuasive precedent of McCray v. State of Maryland, 456 F. 2d 1, 6 (4th Cir. 1972) ("Of what avail is it to the individual to arm him with a panoply of constitutional rights if, when he seeks to vindicate them, the courtroom door can be hermetically sealed against him by a functionary who, by refusal or neglect, impedes the filing of his papers?").

35.     Also, there is a constitutional duty to enforce the law when a government officer is the one breaking the law. See DeShaney v. Winnebago County Dept. of Social Servs., 489 US 189, 196 (1989) ("the liberty protected by the Due Process Clause affords protection against unwarranted *government* interference") (emphasis in original). See also Harris v. McRae, 448 US 297, 317-318 (1980) (same). Therefore, even if the Circuit Clerk did not cause her own *constitutional* injury, the fact that she caused me an injury, period, under color of law, means the Defendants take on a duty[2] to enforce the law against her.

36.     Therefore, the second and final essential element of a § 1983 claim is established as well.

---

2   for which they are not immune from suit; see Paragraph 7 of this Complaint for details.

### Sub-Section 2: First Amendment Retaliation

37.      To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, I must show (1) that I engaged in a protected activity, (2) the government official took adverse action against me that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. In brief, I must show the official took the adverse action because I engaged in the protected speech. See Revels v. Vincenz, 382 F. 3d 870, 876 (8th Cir. 2004).

38.      I have engaged in numerous First Amendment Protected activities in the past. See Paragraph 16 of this Complaint. Therefore, the first essential element of First Amendment Retaliation is established.

39.      The second essential element is also established by judicial notice. The Motion to Enforce Mandate, as well as the order denying that motion, are both on file as public record in Case No. CV-16-16 in the AR Court of Appeals. They are also available for viewing on the state judiciary's website, AOC Court Connect, and unlike the federal courts' PACER service, you do not even have to pay to view the documents.

40.      The essential element of causal connection is sufficiently plead in Paragraphs 17-19 of this Complaint. A jury could easily find that the AR Court of Appeals' refusal to enforce the mandate was motivated at least in part by the State of Arkansas' longstanding and well-documented hatred of me ... especially when the Defendants made no effort whatsoever to offer any better explanation for their refusal. In the absence of any pretextual excuse offered, my evidence of the Defendants' longstanding, well-documented vendetta against me will go uncontested.

### Sub-Section 3: Essential Elements of an Ada Retaliation Claim

41.      "In order to establish a prima facie case of retaliation, a plaintiff must show (1) that he

engaged in a statutorily protected activity, (2) that an adverse action was taken against him, and (3) a causal connection between the adverse action and the protected activity." Amir v. St. Louis University, 184 F. 3d 1017, 1025 (8th Cir. 1999). In other words, the essential elements for an act of ADA retaliation are the same as those for an act of First Amendment Retaliation, except that you swap out "First Amendment protected activity" for "statutorily protected activity." Other than that, the essential elements are entirely interchangeable.

42.     Because the essential elements are interchangeable, that means the elements are established through the same pleadings and judicial notices as the First Amendment Retaliation claim.

43.     I have engaged in numerous statutorily protected activities in the past; see Paragraph 16 of this Complaint.

44.     The State of Arkansas committed an adverse action against me by refusing to enforce her mandate.

45.     The essential element of causal connection is sufficiently plead in Paragraphs 17-19 of this Complaint. A jury could easily find that the AR Court of Appeals' refusal to enforce the mandate was motivated at least in part by the State of Arkansas' longstanding and well-documented hatred of me ... especially when the Defendants made no effort whatsoever to offer any better explanation for their refusal. In the absence of any pretextual excuse offered, my evidence of the Defendants' longstanding, well-documented vendetta against me will go uncontested.

**Sub-Section 4: Potential Pretextual Excuses the Defendants are likely to use**

46.     I am not required to do this, at least not at this stage. When reviewing a Complaint for failure to state a claim, either under Fed.R.Civ.P. 12(b)(6) or under 28 USC § 1915(e)(2)(B)(ii), the Court is required to accept the facts listed in the Complaint as true and in a light most favor-

able to the Plaintiff. The Court is not supposed to look beyond the Complaint for deficiencies in the factual allegations. The Court can only dismiss the complaint for failure to state a claim if the facts are insufficient to establish a prima facie claim, or if the facts themselves clearly indicate an obvious affirmative defense, such as the Statute of Limitations or sovereign immunity (the latter of which I have already argued against).

47.     However, just to ensure there is no confusion as to what is in dispute, I will attempt to nip this in the bud right here and now.

48.     I can think of two pretextual excuses the Defendants are likely to offer for why they denied the Motion to Enforce Mandate. However, both of them would be clearly pretextual if the Defendants tried to use them.

49.     First, the Defendants might argue that my Motion to Enforce Mandate was in some way technically deficient. For example, maybe it was called "Motion to Enforce Mandate" when it in fact should have been called something else. This would certainly explain why, on AOC Court Connect, the motion is actually listed as "Motion for Other."

50.     However, that pretextual excuse fails on the merits. It is clearly established law that pro se filers are entitled to have their pleadings liberally construed, and they should not be denied on collateral attack solely by reason of the slightest technical deficiency. See Haines v. Kerner, 404 U.S. 519 (1972). Although Courts are not required to lessen the essential elements for liability (e.g. they are not required to hold a defendant liable against a pro se plaintiff when those same facts would exonerate that same defendant under the same circumstances if the plaintiff were represented by counsel), purely technical deficiencies should be given considerable leeway.

51.     Even if the Defendants could point out a technical deficiency in the Motion to Enforce Mandate, the bottom line is that they still knew full well what I was asking them to do.

52.     Maybe they were arguing that the Circuit Clerk was indeed acting properly ... that the case was dismissed with prejudice and the AR Court of Appeals' intention with their mandate was for the case to remain forever closed.

53.     That is also clearly pretextual. The majority opinion entered at 9:01AM on September 6, 2017 (which is also available for free viewing on AOC Court Connect), the order clearly stated that eight (8) claims were left unresolved. That's what "unresolved" means; the case clearly si not done! At no point in the majority opinion did the panel even *imply* that the circuit court was under no obligation to actually adjudicate the remaining claims! In fact, their decision that the appeal was an interlocutory one was expressly based on the legal notion that a trial court must adjudicate all claims that are properly before the Court!

54.     Therefore, if the Defendants try to argue that the Circuit Court case was properly kept closed, it is obviously and clearly pretextual by reason of making no sense.

## SECTION V: RELIEF REQUESTED

55.     If it is determined – on summary judgment, jury verdict, or otherwise – that the Defendants have unconstitutionally retaliated against me, I request the following relief:

### Sub-Section 1: First Prospective Injunctive Relief

56.     First and foremost, I request an injunction ordering the individual defendants to vacate their Order Denying the Motion to Enforce Mandate, and subsequently take whatever actions are necessary to ensure the Circuit Court's compliance with that order. Since the individual defendants are not immune from suit in this case since it is an action taken in their enforcement capacities, this injunction is reasonable.

### Sub-Section 2: Second Prospective Injunctive Relief

57.     Second, I request an everlasting injunction against the State of Arkansas to permanently

and perpetually cease and desist retaliating against me for any act of ADA retaliation.

58.     This requested injunction is identical to the injunction requested in Paragraph #59 of the. "Complaint and Jury Demand" of Case No. 16-545 in this Court. Granting the injunction in either case would satisfy me.

59.     The injunction should be deemed violated in case of any adverse action where the State of Arkansas fails to offer any motive. After all, the complete absence of a pretextual motive in this case is the primary reason my argument that they are doing this out of personal hatred for me because of my litigation history will go uncontested.

60.     The injunction should also be deemed violated when the government offers a pretextual excuse that is not supported by the evidence. After all, if I move for the State to be held in contempt of court for violating this injunction, the contempt charges will be in a heavily condensed, heavily simplified proceedings. We will not have the benefit of discovery, calling witnesses, etc. As such, in order to ensure that the injunction is complied with, the Defendants should hold the burden of proof in the first instance of documenting their motive.

61.     This requested injunction would *not* cover actions that are expressly authorized by law and/or that have always been accepted as means of curbing abuse of the court system, such as charging me with Arkansas' Class A Misdemeanor of "frivolous, groundless, or malicious prosecutions."[3] As long as I am entitled to full due process – including, but not limited to, the right to discovery, the right to cross examine the state's witnesses, and the right to compel my own witnesses – and I cannot be punished unless there is actual *evidence* (and no, the arbitrary and summary finding of a clearly-biased judge does not count as evidence) that my prosecutions were indeed frivolous, then I have no objections to being held accountable for legitimate abuses

---

3    See AR Code § 5-53-131 (2015): "Any officer or any person who knowingly brings or aids and encourages another to bring a frivolous, groundless, or malicious prosecution is guilty of a Class A misdemeanor."

of my rights. But as I said, it should take more than just some judge who is annoyed by me to simply *state* that I am abusing the court system, while providing absolutely no evidence whatsoever to back up his claim, to justify that I need to be punished.

### Sub-Section 3: Compensatory Damages

62.     I also request that the State of Arkansas, upon being held liable for ADA Retaliation, be ordered to pay compensatory damages to me. This request for damages is allowed under the precedent of Meagley v. City of Little Rock, 639 F. 3d 384 (8th Cir. 2011). Because the Defendants' refusal to enforce the mandate has delayed my ability to obtain judgment on the claims, I request compensatory damages equal to the post-judgment interest on that judgment. As I established, the post-judgment interest is $3,013.70 per day.

63.     I request that these damages begin to retroactively accrue starting on October 13, 2017, the date the Defendants actually put their retaliation into action. I ask that these daily damages continue to accrue until the Defendants comply with the first injunction requested in Paragraph 56 of this Complaint. Only by doing that would the Defendants have ceased inflicting a continuous injury.

64.     If the Defendants engage in actions consistent with the injunction requested in Paragraph 56 immediately after being served with process in this case, thus rendering the first injunction unnecessary, I would still ask that the Court award the damages of $3,013.70 per day up to the point where they actually do that. After all, stopping your illegal actions might prevent any further liability, but you still deserve to suffer the consequences of the illegal actions you have already committed.

65.     For example: Suppose you rent an item from a rental store. You do not return the item by the specified due date, and rack up lots of late fees as a result. The leasor sues you for the item,

only for you to then return it. Well, even someone who has dropped out of high school – let alone someone who has graduated law school – can tell you that you still need to pay the late fees.

66.     This case is no different. Performing actions that render the first injunction unnecessary may cause their accumulation of damages to stop, but the accumulation of damages would not be reversed or negated.

### Sub-Section 4: Punitive Damages

67.     Section 503(c) of the Americans with Disabilities Act says that the remedies available for retaliation are the same as those for discrimination in the first instance. So when a government entity is being held liable for ADA retaliation, the remedies available are the same as those in Title II of the Americans with Disabilities Act.

68.     Title III of the ADA expressly forbids the awarding of punitive damages. However, Title II of the ADA contains no such language. Title III of the ADA clearly shows that, when Congress intends to not allow the recovery of punitive damages, they will state that intention in the plain text of the statute. Therefore, because that language is not present in Title II, Congress necessary intended for state governments to be held liable for punitive damages.

69.     Therefore, I request four (4) times the amount of compensatory damages, or $12,054.80 per day, in punitive damages, in order to give the Defendants the most possible incentive to comply with the Second Injunction that is requested in Paragraphs 57-61 of this Complaint.

### SECTION VI: JURY DEMAND

70.     In the event that a trial is needed to adjudicate any facts, I ask that this case be tried by a jury of my peers.

### SECTION V: CONCLUSION

71.     They just won't stop. Any chance they get, they go out of their way to make my life a

living hell, by denying me access to the courts for no reason, denying me justice for no reason, and even throwing me in jail just so they can use that as leverage to get me to stop exercising my First Amendment rights in a way they don't like. A prospective injunction ordering them to stop is the only way to get them to stop.

72.    Wherefore, premises considered, I respectfully request that this Court award me the injunctive relief and damages requested in Paragraphs 55-69 of this Complaint, award costs incurred, and any other relief to which I may be entitled.

So requested on this, the 27th day of October, 2017.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-240-6561
stebbinsd@yahoo.com